Good morning. May it please the Court, Monica Ramirez on behalf of Petitioner Bravo-Pedroza. I'd like to reserve two minutes for rebuttal. We've raised three issues in our brief. The principal issue in this case, however, and the one I will focus on today, is whether Ras Judicata bars the government from relitigating Mr. Bravo's deportability in a second proceeding based entirely on pre-existing grounds that could have been litigated in a first proceeding. In this case, the government's decision to bring a second proceeding based on available grounds that existed in the first proceeding, when it charged Mr. Bravo's petty theft as an aggravated felony, resulted in him languishing in immigration detention for a total of five years, an additional three years during the second proceeding. The government can provide no rationale or justification for bringing this second proceeding. Well, I mean, I think the rationale is they think it's valid so that there are grounds to remove him. Yes, Your Honor. The government believes there are grounds to remove him. However, the government had its opportunity in the first proceeding to bring all grounds of deportability against Mr. Bravo. Go ahead. In the first proceeding that was pre, as I recall, pre-Corona Sanchez, they figured they had the aggravated felony, so in a sense, no reason to pile on. And it was only later that they found out that the petty with the priors is not going to be an aggravated felony, and they brought the alternative grounds. In effect, you're saying he should stay just because they didn't, it's not any new facts or anything, and they just figured they had the aggravated felony. Your Honor, the government apparently believed it had the aggravated felony, and it decided to proceed with that ground alone. And we're not challenging its discretion to do that. The government has the power to elect the charges it wants to proceed with. However, when the government charged Mr. Bravo with the aggravated felony, the law of this Court at that time was that petty theft under California was not, I'm sorry, was an aggravated felony. However, before the case went before the immigration judge in the first proceeding, this Court had already agreed to take the case en banc and had vacated the panel's decision. Now, at that point, the government, knowing that its strategy might or might not work, could have brought the second two crimes involving moral turpitude charge. However, it elected to continue to proceed with its one strategy. That's fine. However, when this Court ---- They could have elected to do it there. How are you, how is your client hurt? In other words, there's not going to be any new facts. The only question is you still got the same petty with a prior. You still got the same priors in 85, 86, whenever it was. How is that really going to make a difference? It's just essentially the same thing. And now you're saying, well, they should have done it when they got to this court en banc. It's still a ways down the road. What's the difference? Your Honor, the government, at the time of the first proceeding, at any time during that proceeding, it could have elected to lodge additional charges or substitute charges. However, it decided to proceed on the aggravated felony ground alone. Now, West Judicata, which this Court has found to apply to immigration proceedings, bars the government from attempting to relitigate the question of deportability based on grounds that it could have alleged in the first proceeding. This Court in Ramon Sepúlveda made it clear that West Judicata applies to immigration proceedings. The Fifth Circuit in Medina has made it clear that for West Judicata to apply, the Court need only consider two considerations. Any of those cases involve the kind of problem we have here. And let me identify specifically what concerns me from a practical perspective. If your argument prevails, you're basically saying the government has to bring them all from the outset. We don't require prosecutors to do that. I'm not saying this is like a criminal prosecution, but the policy considerations have some similarity. I'm not sure that it helps anybody to force the government to bring everything that it can from the beginning, if only because it's going to burden both the immigration court system and eventually us with multiple claims when it would appear that one would do. That's a practical problem for those of us that have to adjudicate these claims. Why should we take on that additional burden? Your Honor, first let me explain. We're not here to ask the government or to require the government to bring all grounds of deportability at one time. We're not saying that's the requirement. What we're saying is that there are consequences to the government's decision. Well, consider the consequences. Because there are consequences, because in this case you're arguing too late, you can't bring the additional claims later, doesn't that suggest the government ought to bring everything it can from the very beginning so that at least they've got them sitting on the shelf if they need them? Well, the government should bring everything in the beginning if it doesn't want to later suffer this. But that gives you the practical problem that I identify. Why does the adjudication system want to deal with everything possible when it would seem like one would be enough? Your Honor, the practical problem here is really the fact that we're here, that now we have a second proceeding. Res judicata applies to enforce repose. The fact that the government decided to bring the second proceeding when it could have brought this instant charge in the prior proceeding has actually created more problems for the judicial system. It actually drains resources to have the government continue to litigate an issue when it could have done it at one time. There are rules that apply to immigration proceedings. There are rules that govern immigration proceedings, Your Honor. It's an adversarial system in which both parties bear different burdens. And here the government had its chance. The government decided we're going to proceed on the aggravated felony ground. We believe that's a strong ground of deportability. We think we're going to win on that. The law changed. The time they started appeared to be? For about a month and a half, which was before the case went before the immigration judge in the first proceeding. And then we're back to where we were. Isn't there, in fact, a change in the law that meant that what looked like, in effect, to use the technical term, a slam dunk, suddenly went out the window when the aggravated felony count went out? So they could have brought it then. They brought it now. No new facts. Same charge. It's not like there are facts that were adjudicated that now need to be re-redone, re-litigated. The question is, was there a conviction on the petty with the prior and the prior two? It's essentially the same thing. And I tend to echo Judge Clifton and say, why pile them all on the first one in the first situation when there's really no different facts? Your Honor, three points. First, the Corona-Sanchez decision, just to be clear, did not affect the government's ability to bring the instant two crimes involving moral turpitude charge. It had no effect on that. Two, the Corona-Sanchez decision, what it did was that it demonstrated that the government's strategy was a doomed one. At the time this Court decided to take the case en banc, the government could have lodged additional charges. More important, however, once this Court decided Corona-Sanchez en banc and held the petty theft did not qualify categorically as an aggravated felony, the government at that point, knowing that strategy had selected, was doomed, could have, under regulations, could have lodged additional or substitute charges at that time. It could have done that at any point before the Board vacated the removal order and terminated proceedings. And the reason that that is so important, Your Honors, this is my third point, is because in any adversarial system, in any judicial system, there needs to be a limit. There needs to be limits on the government's power to continue to bring new charges. Without a limit, without applying res judicata in this case, Your Honor, then the government effectively has the power to always, to basically always win. If it doesn't win in one proceeding, then it can bring a new proceeding. If it has available grounds of deportability in one case but says, hey, we're going to go with the aggravated felony because that's a winner, even though the law is unstable, it's in question, the Ninth Circuit is taking this case en banc, we're going to go with that strategy, even though we have all the facts and all the law available to us to bring this other ground of deportability. Now, if res judicata doesn't apply, then why do we have rules governing immigration proceedings? Then why do we have rules that say you can't bring a motion to reopen unless you have new facts? Why are there burdens of proof? Because the system believes that at some point there has to be a limit. And if the government can always say, well, we didn't bring this before, but we can bring it now, then there's no limit. The government can continue. Always do it. We've got a unique situation here with a change in the law, no additional factual burden. I mean, this is not a ñ I think you're kind of going down a slippery slope there. I don't think a result, a non-application of res judicata here opens the door to every case being a situation where the government can just pile things on later. Your Honor, I'd like to stress that Corona Sanchez is not a material change in law. What Corona Sanchez did, as I already explained, that goes to the aggravated felony. So what's interesting here is also the timing. We would concede that if Corona Sanchez had been the law of this court, the panel decision, had been the law of this court up until, you know, a month before the board decided the case, then maybe in that situation there's a substantial justification for why the government didn't bring the instant charge. But here, for two-and-a-half years, the proceedings lasted two-and-a-half years. The government had all of these facts. It knew the law on the aggravated felony ground was in question. It had the power under the regulations to lodge additional or substitute charges. So there's really no rationale or justification. Now, this Court has said ñ I'm going to expire. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, I am Blair O'Connor, representing the Attorney General in this matter. Your Honor, the Petitioner's case has admitted on multiple occasions that he has prior convictions for robbery and burglary. Although found deportable for these offenses in 1990, he was granted a waiver of deportability by an immigration judge and was allowed to remain in the United States. He subsequently committed two additional offenses, the last of which was a petty theft with prior conviction. And I think it's clear. We're aware of the charges. What ñ it seems to me that in light of the fact that the new charge was essentially done within days of the time that the reliance on the aggravated felony was abandoned, it sure looks like everybody was preparing this in advance, anticipated it. Why didn't the government come in or try to make some amendment or change when Corona-Sanchez came down? Well, unfortunately, the record does not, you know, indicate why only the aggravated felony charge. I thought you might have some secret knowledge. I'm sorry, Your Honor, I don't. I mean, as the Court kind of pointed out in the appellant's argument, I mean, the aggravated felony charge normally is a more serious charge, although here it really would have made a difference because the alien was granted 212C relief. He was, therefore, ineligible for cancellation of removal independent of him being found in the ñ deportable as an aggravated felon. But, Your Honor, I'd like to ask you about the effect of the regulation that the opposing counsel mentioned, which says, it's H.C.F.R. 1003, at any time during deportation or removal proceedings, additional or substituted charges of deportability may be lodged by the government. Now, that gives you a clear right to bring new charges if it's ñ the proceeding is going on. And I would think the common sense reading of that was it excludes other times. You can bring them while the proceeding is ñ during the proceeding, but not afterwards. Well, Your Honor, I'm not aware of any court taking that ñ No, you're not aware of it. Why don't you answer the question? If it says during, it doesn't mean after, does it? I disagree, Your Honor. I mean, I don't ñ Well, that's it. You're doing this after. You're violating the regulation. I understand, Your Honor, again, but at the time the government brought the aggravated felony charge, it was doing that in good faith. I mean, under the law ñ We're not ñ there's no question about good faith. This is a very unsympathetic person. But we're trying to observe what the rules of law are, not whether somebody's a good target for deporting or a bad target or whether the government ñ we just say, did you follow the rules? It's essential that we follow the rules or we're going to have order in this court. Again, Your Honor, I mean ñ I don't have any answer on that. I would ñ other than I would just disagree with your interpretation that that reg bars any charges being brought. In light of Judge Noonan's question and my question earlier and counsel's point, you have the situation where the government relied on the aggravated felony for the petty with a prior. It had to be clear at least when the circuit granted in bank review that that might no longer be the law. Obviously, the government knew that there was also the claim on the ñ showing a moral turpitude. It had it ready to go. Why ñ it seems to me that you put that all together and the government should have done that during the proceeding. It had ample notice, ample time, was ready to go within days thereafter. Why shouldn't it be required that they have done it and comply or at least follow the regulation? They could do it within, as counsel has pointed out and as Judge Noonan has pointed out, within that time. Shouldn't that be the rule that where you clearly have knowledge of what's coming, then get your charges in? Again, Your Honor, we concede that the government obviously could have brought that additional charge prior to the board's initial decision. But we disagree that res judicata should be applied in this context. No court has applied res judicata to the government's prosecutorial discretion in bringing charges. And it would not enforce or oppose in this case because this alien remains and continues to be in the United States in violation of immigration law. Mr. McConnell, I want to ask you another question pursuing Judge Clifton's view as to judicial efficiency. Isn't it terribly inefficient that the government can wait and start a second case, involve the I.J.'s time, maybe the Court of Appeals' time, who knows? But as long as you can bring charges that you've kept back, you've got to – you can waste that time, time and again. Isn't that true? Again, Your Honor, yes. This case has been dragged on. The alien has been allowed to remain in the United States in violation of immigration law throughout this period, however. Well, the reason for which he's in jail is to make – He's been in jail, so it's not like he's in paradise. He's made additional offenses because he's been in jail, Your Honor, but – There are two reasons, at least, for res judicata. One, an elementary fairness that once a case is over, it's over. The other was judicial efficiency. And this is terribly inefficient. You know, I understand that, Your Honor. But this Court also has held that when there's an intervening change in the law, res judicata should not necessarily apply. It held that in the Artikovic decision. And here, obviously, there was an intervening change in the law. After the board's – after the IG's and board's initial decision, this Court decided Corona-Sanchez, which made it clear that the petty theft of offense with priors is not an aggravated felony. Therefore, res judicata should not bar, should not prohibit the United States from attempting to deport this obviously, undisputedly unlawful alien, allow him to remain in the United States. Do the chronology slowly. When Corona-Sanchez comes out, the en banc decision comes out in 2002. By that time, the die is cast in this case, but perhaps not irretrievably. And, you know, we understand you get the case that you get. But the person in your position in 2002, after Corona-Sanchez, probably should have taken a look at this case and said, uh-oh, this one's not going to survive. In any event, in December 2002, the panel of this Court says just that. Under Corona-Sanchez, this can't survive and sends it back. And a full five months pass before the BIA applies the rule here. And there's a long time there for the government to step up and bring a motion to reopen or to amend or to add additional charges. I mean, it seems to me that's the opportunity. And nothing happens during that time. And the BIA dismisses, and the government, rather than seeking to reopen, files new charges. Now, it's a procedural difference, but some of these procedural differences have bite because if they don't, the rules of procedure don't mean anything. Now, why is it that the government shouldn't be told, look, proceed in the case that's open, explain to the BIA why you should be allowed to reopen or why you should be allowed to amend, use the regulation that Judge Newton cited, as opposed to wait until that's all over and pick up as if nothing had happened? I understand that, Your Honor. This Court came out with Corona-Sanchez in June of 2002. There was a petition for review that was pending of the board decision in this case at that time. Well, that's why I focus on even the December 2002 to May 2003. It's out of this Court on its way back to the BIA. And it seems pretty apparent the BIA doesn't have a whole lot of choice. It can't overrule our Court's decision on Corona-Sanchez. At that point, it seems apparent to the government that the existing charge can't stick. They've got to do something else. And rather than seek to amend in that proceeding, they wait until the BIA dismisses the proceeding and starts anew. Well, that's an extra five or six months the guy's sitting in jail that nothing's happening. Now, everybody's busy, and I understand the avalanche of immigration cases, and you could barely get your head over the paper at that time. The problem is that that case is closed. And traditional res judicata law plainly covers not only the claims that are actually filed, but the claims that could have been filed. So here we are. And it seems like the practical answer is to focus at the opportunity I've just suggested. File your charges there. Seek to amend the existing proceeding. That didn't happen. And, you know, in some ways I'd like to carve out an exception because I understand the practical problem, but I'm not sure how to do that without doing damage to the whole fabric of res judicata. So if you can offer a way station or a limiting principle, I'd like to hear it. But otherwise, I've got the same problem you've heard from my colleagues. I understand, Your Honor. Again, I'm not saying it's an excuse. At the time, you know, the Board was in the midst of a streamline initiative. It was trying to eliminate literally, you know, tens of thousands of backlogs of cases. You know, this case was in the procedure of going back from this Court at that time. But I guess I would rely on the Supreme Court's decision in American Arab where the Supreme Court held that the contention that a violation of immigration law must be allowed to continue because it has been improperly selected is not powerfully appealing. And, again, here there is no evidence of bad faith or affirmative misconduct by the government in the way in which it brought the initial charge in this case. Did this law, did the law change? The bad faith is really not required. I know it's been suggested, but the point is the fact that the petty with a prior could serve as a grounds based on moral turpitude wasn't a surprise. That was known at the outset. They put all the eggs in one basket. Well, the basket hadn't been taken away when they still had an opportunity to change it. And I guess the question to you is we know you weren't there, but why shouldn't we take the position that in that situation it's up to the government to amend or bring those charges within that action per the regulation? Is there a policy reason why that shouldn't happen, that shouldn't be the rule? All I can say, Your Honor, again, is that it goes to the prosecutorial discretion of the government. And res judicata is just, it's not very appealing whatsoever to apply res judicata to the government's prosecutorial discretion in which to bring charges. I mean, the Supreme Court has barred review of those issues in the 242G, which indicates an intent that they're not, it's just not, they're not very, it's not subject to judicial review, and I would rely on, rest on that. I thank both counsel for a well-argued case. The case just argued is submitted. And we now move to the next case in this morning's calendar, Singh v. Gonzalez.
judges: Noonan, Clifton: Schiavelli